IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Gloria Holmes, | ) | C/A No. 3:11-2116-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Cellco Partnership *d/b/a Verizon Wireless*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      The plaintiff, Gloria Holmes ("Holmes"), brings this action[1] against her former employer, Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; and 42 U.S.C. § 1981. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 31.) Holmes filed a response in opposition (ECF No. 39) and the defendant replied (ECF No. 41). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

      The following facts are either undisputed or are taken in the light most favorable to Holmes, to the extent they are supported by evidence in the record. Holmes is an African-American female, and during the relevant time period she worked for Verizon in its customer service call center. She had an unblemished employment record until December of 2009, when she received a Final Written

---

[1] The defendant removed this action from the Richland County Court of Common Pleas.

Page 1 of 14



Warning, a serious disciplinary measure which essentially placed her in a probationary status where any further disciplinary problems within the following twelve months could lead to termination. Holmes received the Final Written Warning in December 2009 because of a conversation she initiated with co-workers some two months prior regarding their use of toilet paper. Present for the conversation were two other black female employees, one black male, and one white female. The conversation also included discussion about how often people bathed, and at some point during the discussion, someone made the comment that "black people are anal."[2]  During the conversation, the Caucasian employee, Teresa Plagg, became offended and left the work area in tears.

      Plagg subsequently discussed the incident with the supervisor of Plagg and Holmes, Lakeisha Jenkins, who is African American. Jenkins offered to move Plagg to a different team, but Plagg declined. Jenkins did not further report the incident further to anyone else in management. Approximately two months later, Anja Edmond, a Caucasian supervisor one level above Jenkins, heard about the inappropriate conversation from Plagg and initiated an investigation. Interviews with the parties involved—including Holmes—confirmed Plagg's version of events. As a result, Holmes received the Final Written Warning, the two female African-American employees were verbally coached not to participate in inappropriate conversations, and Plagg was counseled regarding reporting such incidents. Jenkins received a written warning for failing to take action after being "made aware of offensive/discriminatory discussions." No action was taken regarding the African-American male employee. Plagg was then transferred to a different team.

---

[2] The parties dispute whether this statement was in fact made by Holmes, or by Plagg herself. Notably, the record shows that when initially interviewed, Holmes attributed the comment to herself; however, Holmes claims in this litigation that Plagg made the statement.



Holmes, who felt the Final Written Warning was unjustified, complained to Stacey Young, an African-American employee in the human resources department. She perceived that Young took no action. Therefore, Holmes contacted the Verizon Corporate Hotline and made a complaint on January 8, 2010. Later she complained via e-mail to Human Resources Director Laurie Severino, who is Caucasian, that she had been unfairly disciplined and noted that Plagg had made inappropriate comments as well.

In April 2010, Holmes's new supervisor, Greg Johnson, an African-American male, became aware during the performance of his duties as a supervisor[3] of four customer service calls in which he determined that Holmes had acted in a manner contrary to Verizon's customer service policies. On one occasion when Johnson attempted to counsel Holmes regarding her behavior toward customers, she walked away from him. Holmes was subsequently terminated for the stated reasons of "rude behavior to peers, supervisors, and customers" following issuance of a Final Written Warning.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

---

[3] At least two of these calls were brought to Johnson's attention following complaints by customers about Holmes.



evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510,



520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer



unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Title VII Disparate Discipline and Disciplinary Discharge**

To establish a *prima facie* case of discrimination based on disparate discipline, a plaintiff must show:  (1) that she engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against her were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Similarly, to establish a *prima facie* case of Title VII discrimination with regard to a disciplinary discharge, Holmes must show (1) that she is a member of a protected class; (2) that she was qualified for the job and that her job performance was satisfactory; (3) that she was discharged; and (4) that other employees outside the protected class were retained under similar circumstances. Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995). To prevail on either theory, Holmes must show that an employee outside the protected class who was similarly situated to her was treated more



favorably. See Lightner, 545 F.3d at 264-65 (requiring a plaintiff to show that she engaged in prohibited conduct *similar* to that of a person of another race, color, sex, religion, or national origin); Bryant, 288 F.3d at 133 (requiring a plaintiff to demonstrate that other employees outside the protected class were retained under *similar* circumstances).  Generally, to be similarly situated and thus permit a valid comparison, the employees outside the protected class must have dealt with the same decision maker, been subject to the same standards, and have engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.  Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated").[4]

In support of her claim of disparate discipline, Holmes argues that she was disciplined more severely than Plagg with regard to the October 2009 workplace discussion and that Plagg's alleged comment that "black people are anal" was more egregious than Holmes's conduct.  This argument largely rests on Holmes's litigation position attributing the comment to Plagg, rather than to herself.  Even if the originator of this statement could be fairly characterized as a disputed fact, however, such a dispute is not material because the law is clear that the pertinent inquiry is whether the decision maker honestly believed Holmes made the statement.  See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision

---

[4] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Haywood v. Locke, No. 09-1604, 2010 WL 2711294 (4th Cir. July 6, 2010) (unpublished); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 Fed. Appx. 255 (4th Cir. 2007) (unpublished); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (Table); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998) (Table).



maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decisionmaker which is relevant' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)); Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 722-23 (4th Cir. 2002) (" '[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's [adverse employment action].' ") (alterations in original) (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).  No evidence supports a finding that prior to Holmes's receiving the Final Written Warning, Verizon had any reason to know that Plagg rather than Holmes made the statement.  Rather, the undisputed evidence shows that interviews with the individuals present for the inappropriate conversation—including Holmes's own statement—substantiated Verizon's perception that Holmes was more at fault than the other employees with regard to the inappropriate workplace discussion and otherwise corroborated Plagg's version of events.  See Holland, 487 F.3d at 217-18; see also Duggan v. Sisters of Charity Providence Hosp., 663 F. Supp. 2d 456, 468 (D.S.C. 2009) (finding that aggravating circumstances precluded the plaintiff's proffered comparators from being similarly situated in a disparate discipline case).  Of the participants in the discussion, Holmes alone was disciplined; two other African-American employees, like Plagg, received verbal coaching, a non-disciplinary measure.  And with regard to the African-American male employee, Verizon took no action at all.  Consequently, the record belies Holmes's contention that all of the African-American employees were disciplined while Plagg, the only white employee, was not.  Similarly, even if Holmes could establish a *prima facie* case of disparate discipline, no reasonable jury could find that Verizon's proffered legitimate, nondiscriminatory reason for giving Holmes a Final Written Warning—its perception that she

instigated the discussion and made inappropriate racial comparisons—was not the true reason for disciplining her, or that race was the true reason.

Nor can Holmes prevail on a discrimination claim based on her discharge stemming from the four telephone calls in April 2010. Her own belief that her interactions with customers and with Johnson were not sufficiently serious to justify termination is insufficient to establish a *prima facie* case. See Evans v. Technologies Applications & Svc. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (internal quotation marks and citations omitted); see also DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.") (internal quotation marks and citations omitted). Further, she can offer no valid comparator for her disciplinary discharge, since the record is undisputed that other employees—both black and white—who were discourteous to customers or insubordinate to supervisors, were also discharged. (See Def.'s Mem. Supp. Summ. J., ECF No. 31-1 at 19-20.). Certainly she has not identified anyone who had already received a Final Written Warning who was retained following discourtesy to customers or supervisors.

The record simply does not support a reasonable finding that Verizon was motivated either to punish Holmes more severely than Plagg or to discharge Holmes based on Holmes's race. The court observes that Young, one of the decision makers regarding the issuance of Holmes's Final Written Warning, who is alleged to have disregarded Holmes's complaint about Plagg's alleged statement and was one of the decision makers as to Holmes's termination, is also African American. So is Johnson, who identified and characterized as discourteous the four calls that led to Holmes's termination and who was also involved in the decision to discharge her. To the extent any inference

PJG

could be drawn of discriminatory disparate discipline or discharge, these facts negate it. See Demesme v. Montgomery Cnty. Gov't, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd *per curiam*, 208 F.3d 208 (4th Cir. 2000); see also Coggins v. Gov't of District of Columbia, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely.").

**D.     Retaliation**

Holmes's claim of retaliation also fails. Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). In a typical retaliation case, a plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218. To constitute protected activity, a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated federal law. See Cordero v. Florida, No. 4:06cv529-SPM/AK, 2007 WL 2972988, at *6 (N.D. Fla. Oct. 9, 2007) (ADA) ("[A]lthough Plaintiff complained generally that [his supervisor] treated him poorly, he never complained about disability harassment. The [employer] cannot be held liable for failing to take prompt remedial action since Plaintiff did not put the [employer] on notice that he was being harassed because of his disability."); cf. Okoli v. City of Baltimore, 648 F.3d 216, 224 & n.8 (4th Cir. 2011) (Title VII retaliation) (finding that making a complaint of "harassment" and providing a description of the behavior at issue constituted protected activity under Title VII of which the



employer should have known even though the complaint did not use "magic words" identifying the specific trait (gender) protected under Title VII); see also Jordan v. Alternative Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006) (stating that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing Equal Employment Opportunity Comm'n v. Navy Federal Credit Union, 424 F.3d 397 (4th Cir. 2005)).

Here, Holmes relies on the temporal proximity between her alleged complaint to Severino in March of 2010 and her termination the following month to support her argument that she was discharged in retaliation for engaging in protected activity.[5]  This argument fails as a matter of law. First, it is undisputed that Holmes's March e-mail to Severino makes no mention of discrimination based on race and, in fact, does not even describe the comment she attributes to Plagg. See Cordero, 2007 WL 2972988, at *6; (Holmes E-mail, ECF No. 39-10 at 4-7.)  Accordingly, the e-mail cannot constitute protected activity warranting the protection of Title VII and there can be no causal connection between those events.  Further, the undisputed evidence is that Johnson raised the issue of Holmes's discourtesy during the four customer service calls and her insubordination toward him. Holmes's theory that Johnson exaggerated the seriousness of these occurrences as an excuse to terminate her employment in retaliation for her complaints cannot establish the necessary causal

---

[5] Even accepting Holmes's assertion as true that she attributed the comment at issue to Plagg in her complaint to Young in December of 2009 and to the customer hotline on January 8, 2010, those complaints, assuming without deciding that they constitute protected activity, are too remote in time to alone establish the requisite causal connection to her termination.  See Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229 (4th Cir. 2006) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment).



connection because no evidence in the record indicates that Johnson was aware of Holmes's purported protected activity.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (holding that the decision maker's knowledge that a plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case of retaliation).  On this record, no reasonable jury could find that but for her complaints, she would not have been discharged.  See Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 365-66 (4th Cir. 1985), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

      Moreover, even if Holmes could establish a *prima facie* case of retaliation, she cannot show that Verizon's proffered legitimate, nonretaliatory reason for her termination is pretextual.  Although she challenges the truthfulness of Verizon's stated reason by characterizing management's perceptions of the interactions as "overcooked," (Pl.'s Mem. Opp'n Summ. J., ECF No. 39 at 19), her unsupported opinion that Verizon's response was exaggerated is insufficient to show that she was the victim of unlawful retaliation.  See Reeves, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non[retaliatory] reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no [retaliation] had occurred."); Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination.").



**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendant's motion for summary judgment (ECF No. 31) be granted as to all claims.[6]

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 21, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[6] Because Holmes's civil rights claim under 42 U.S.C. § 1981 rises or falls with her Title VII claim, this claim fails as well. See Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required *prima facie* case are the same."); see also Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (stating that the McDonnell Douglas burden shifting framework, developed for Title VII, has been applied to § 1981 claims).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).