IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Gloria Holmes, | ) | C/A No. 3:11-2116-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Cellco Partnership d/b/a Verizon Wireless, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On June 24, 2011, Gloria Holmes ("Plaintiff") filed an action in the Court of Common

Pleas for Richland County, South Carolina against her employer, Cellco Partnership d/b/a

Verizon Wireless ("Defendant"). ECF No. 1. Plaintiff asserts claims for race discrimination and

retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title

VII"). *Id.* Defendant removed the action to district court on August 11, 2011, *id.*, and filed an

answer on August 31, 2011. ECF No. 8. On June 11, 2012, Defendant filed a motion for

summary judgment, ECF No. 31, to which Plaintiff responded on July 9, 2012. ECF No. 39.

Defendant filed a reply on July 23, 2012. ECF No. 41. In accordance with 28 U.S.C. § 636(b),

and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Paige J.

Gossett for pretrial handling. On January 22, 2013, the Magistrate Judge issued a Report and

Recommendation in which she recommended that the court grant Defendant's motion for

summary judgment. ECF No. 44. Plaintiff filed objections on February 18, 2013. ECF No. 48.

Defendant filed a reply on March 14, 2013. ECF No. 52.

# I. FACTUAL BACKGROUND

In 2001, Plaintiff, an African-American female, began working as a customer service representative at Defendant's call center in Columbia, South Carolina.  ECF No. 31-4 at 4.  In June of 2006, Defendant promoted Plaintiff to global support coordinator, a position which she held until the termination of her employment on May 11, 2010.  ECF No. 39-1 at 2-3.  Prior to December 2009, Plaintiff had an unblemished employment record.  *Id.* at 3.

In October 2009, during work hours, Plaintiff initiated a conversation (the "2009 conversation") with several coworkers concerning the use of toilet paper in the restroom, as well as other issues related to personal hygiene.  ECF No. 31-4 at 26.  The participants in the 2009 conversation included Plaintiff; two African-Americans, Daphne Cheeks and Jovonne McDaniel; and Theresa Plagg[1], a Caucasian.  *Id.* at 25-26.  During the conversation, Plaintiff asked another employee in the vicinity, Willie Townes, to retrieve a roll of toilet paper from the restroom.  *Id.* at 27.  Plaintiff passed the roll of toilet paper around to Cheeks, McDaniel, and Plagg so that they could demonstrate how they folded it and "pretend as if they were using the bathroom."  *Id.* at 28.  Plaintiff remarked that Plagg's method was unsanitary and similar to that of her friend in Tennessee.  *Id.* at 29.  The conversation then moved to how often  Plaintiff and her coworkers bathed.  *Id.* at 30-31.  According to Plaintiff, Plagg, at some point during the conversation, commented, "black people are anal." *Id.* at 31.  After the conversation, Plagg went to the bathroom and cried.  *Id.* at 29.

---

[1] In parts of the record, Theresa Plagg is referred to as "Theresa Smyrl."  For the sake of clarity, the court refers to this individual by the former name.

Plagg complained to her supervisor, Lakeisha Jenkins, but Jenkins failed to take any action. ECF No. 31-5 at 10. On December 10, 2009, Plagg approached her associate director, Anja Edmond, seeking transfer to a different service team so that she would not have to work with Plaintiff. *Id.* Edmond testified in her deposition that Plagg told her she was no longer comfortable working with Plaintiff, citing discrimination and unprofessional treatment. *Id.* at 10. Plagg also told Edmond about the 2009 conversation. *Id.* at 11. Edmond asked Plagg why she had not reported the conversation sooner, and Plagg explained that she first sought to bring the matter to the attention of her supervisor, Jenkins. *Id.* at 11. Later that day, after speaking with Plagg, Edmond reported the 2009 conversation to Defendant's human resources department ("HR"). *Id.* at 10; ECF No. 31-2 at 3. On December 14, 2009, Leigh Curry, an HR consultant, initiated an investigation into the matter with the assistance of Edmond and Jenkins. ECF No. 31-2 at 3.

Curry conducted interviews of Plaintiff, Plagg, McDaniel, Cheeks, Jenkins, and Townes, and prepared an investigation report (the "December report"). ECF No. 31-2 at 60-63. According to the summary of Plaintiff's interview in the December report, she admitted to the following: passing around toilet paper so that her coworkers could demonstrate how they folded it; singling out Plagg for her method of folding toilet paper; and remarking that Plagg's method was unsanitary. *Id.* at 62. The December report indicates Plagg stated in her interview that, during the 2009 conversation, Plaintiff commented " 'she had done the [toilet paper] experiment before and white people don't wipe properly and that they . . . are dirty in other ways also.' " *Id.* The December report further indicates Cheeks stated in her interview that Plaintiff " 'likes to do experiments to differentiate among groups of people[,]' " and that, during the 2009 conversation,

3

Plaintiff commented, " 'black people do it one way and white people do it another[,]' " referring to how they fold toilet paper. *Id.* at 61. Both Cheeks and McDaniel stated in their interviews that they did not find Plaintiff's conduct racist but noted that the 2009 conversation made Plagg upset and caused her to retreat to the bathroom. *Id.* Townes indicated in his interview that he observed Plagg crying after the conversation. *Id.* at 62.

The December report also summarizes Jenkins' interview in which Jenkins described a discussion she had with Plagg about the 2009 conversation. *Id.* In the discussion, Plagg described for Jenkins the details of the toilet paper demonstration and Plaintiff's observations on how African-Americans and Caucasians approach personal hygiene differently. *Id.* Jenkins stated that Plagg did not find Plaintiff's behavior racially offensive but, instead, personally hurtful. *Id.* Jenkins admitted in her interview that she "under reacted" to Plagg's report of Plaintiff's conduct. *Id.* at 63.

Upon review of the December report, Plaintiff's management team–Edmond, Jenkins, and, the director of Defendant's Columbia call center, Sharon Maestas–recommended to HR that Plaintiff be terminated. ECF No. 31-2 at 4. HR manager Stacey Young, HR director Laurie Severino, and HR Executive Director Nancy Percent decided that, although Plaintiff's actions were sufficient to warrant termination, Plaintiff should receive a final written warning. *Id.*

As a result of the investigation, on December 21, 2009, Plaintiff received a final written warning (the "FWW"). The FWW stated:

> In October 2009, you lead [sic] an inappropriate conversation during work time that encouraged an offensive and hostile work environment. This conversation included discriminatory comments referencing race and personal hygiene. In speaking with you and based on the company's investigation of this matter, it was determined that your actions encouraged an offensive work environment.

4

ECF No. 31-5 at 14. The FWW provided that it would remain in effect for twelve months from the date of issuance, during which time any additional violations of Defendant's workplace policies could result in further discipline, including termination of employment. *Id.* McDaniel and Cheeks were not subjected to disciplinary action but received "verbal coaching" regarding how to avoid participation in discriminatory conversations. ECF No. 31-2 at 60-61. Jenkins was subjected to disciplinary action by way of a "written warning" for her failure to act after being made aware of "offensive/discriminatory discussions." *Id.* at 62.

On December 23, 2009, Plaintiff and Young met to discuss the FWW. ECF No. 31-2 at 4. According to Young's affidavit, Plaintiff complained that her punishment was not fair and that she should have received a verbal warning before receiving the FWW. *Id.* Young defended the FWW, explaining to Plaintiff that HR, as well as Plaintiff's management team, considered Plaintiff's misconduct serious. *Id.* Plaintiff testified in her affidavit that she told Young that Plagg should have been disciplined for the 2009 conversation because Plagg made the racially offensive comment, "black people are anal." ECF No. 39-1 at 5-6.[2]

Defendant provides a compliance report hotline, administered by a third-party vendor, as a way for employees to confidentially report their grievances over the telephone. ECF No. 31-2 at 5. For every call, the vendor generates a compliance report and forwards it to HR for review. *Id.* On January 8, 2010, Plaintiff called the compliance report hotline to submit a complaint regarding the FWW. *Id.* The record contains a copy of the compliance report, which states that Plaintiff indicated Plagg reported that, during the 2009 conversation, Plaintiff "told other

---

[2] Young testified that Plaintiff did not inform her that Plagg made an offensive comment during the 2009 conversation. ECF No. 31-2 at 4.

5

employees '[w]hite people are nasty and rotten because they do not shower after sex,' " and "

'Black people are anal.' "  ECF No. 31-2 at 66.  According to the compliance report, Plaintiff

indicated her remarks were not directed to any specific employee and complained that she had

not been provided an opportunity to explain their context.  *Id.*  Plaintiff also reported that

"everyone made comments."  *Id.*  Plaintiff  complained that Edmond and Curry did not adhere to

company policy when they issued the FWW and that a less severe disciplinary action would have

been more appropriate based on the fact that she had no prior reprimands.  *Id.*  On January 17,

2010, Plaintiff called the compliance report hotline to state that she believed Edmond's issuance

of the FWW was "purely vindictive," as it came two months after the 2009 conversation.  *Id.* at

69.  On January 22, 2010, HR manager Young, an African-American, investigated Plaintiff's

complaint to the compliance report hotline and produced her own report.  *Id.* at 71.  Young

determined that the decision to issue the FWW was supported by evidence that substantiated

Plagg's allegations, and that the FWW was an appropriate disciplinary response.  *Id.*  At the end

of her report, Young noted that she had met with Plaintiff regarding the FWW on December 23,

2009.  *Id.*  Young stated that during the meeting she advised Plaintiff of the results of HR's

investigation and that, even though HR had issued the FWW, Plaintiff's conduct was serious

enough to warrant termination.  *Id.*

    On March 23, 2010, Plaintiff sent an e-mail to HR director Severino regarding the FWW,

complaining that it was "unfair and unwarranted," and that she had been "falsely accused."  ECF

No. 31-4 at 63 & 86.  Specifically, Plaintiff claimed that Edmond, "has a preconceived notion

about [her] and [is] biased towards [her]."  *Id.* at 86.  Plaintiff claimed that, when she arrived at

the meeting during which Defendant issued the FWW, Plaintiff heard Edmond remark,

" '[n]othing bothers Gloria.' " *Id.* Within an hour after receiving Plaintiff's e-mail, Severino responded with an e-mail indicating that she had attempted to call Plaintiff's home phone number and an individual answered who told Severino she had the wrong number. ECF No. 31-3 at 10-11. On March 26, 2010, Severino e-mailed Plaintiff to tell her that she had again called and left a voicemail on Plaintiff's home telephone the previous day. *Id.* at 9. On April 7, 2010, Plaintiff sent an e-mail to apologize for missing Severino's telephone calls and to schedule a time to speak. *Id.* at 9.

Also on April 7, 2010, Greg Johnson, Plaintiff's supervisor at the time, wrote Edmond an e-mail in which he recounted an incident involving Plaintiff that took place on April 2, 2010. ECF Nos. 31-2 at 74 and 31-4 at 11. According to the e-mail, on that date, Johnson met Plaintiff for a coaching session to discuss a call from the previous day, during which the customer had become angry.[3] ECF No. 31-2 at 74-75. Johnson wrote that Plaintiff placed the customer on hold so that she could confer with him, but when he asked to speak with the customer, Plaintiff replied, " 'I don't want to be wasting these customer's [sic] time because you have other things to do and I have to meet my call per day[,]' " before transferring the customer. *Id.* Johnson wrote to Edmond that he had hoped a coaching session would help Plaintiff learn how to prevent "the customer from escalating." *Id.* Johnson described the coaching session, stating that he advised Plaintiff that her comment to him was inappropriate and that she needed to do a better job of

---

[3] In the regular course of business, Defendant monitored telephone calls between global tech coordinators, such as Plaintiff, and customers. ECF No. 31-6 at 4. Coordinators routinely receive coaching sessions to review their telephone calls with customers and discuss ways to improve. *Id.* Johnson testified that, in cases where a coordinator has conducted a "really bad call," such as one involving rude or condescending behavior, or an otherwise unpleasant experience for the customer, he documents the call and brings it to the attention of his associate director. *Id.* at 6.

addressing customer concerns. *Id.* Before the coaching session was over, Plaintiff left, stating she did not want to be " 'patronized.' " *Id.* Edmond forwarded Johnson's email to HR consultant Curry, stating that she thought it was important to bring the matter to the attention of HR, given that Plaintiff was subject to the FWW. *Id.* at 74.

On April 16, 2010, Johnson wrote Curry an e-mail that cited two of Plaintiff's calls that he believed reflected poorly on her performance. ECF No. 31-2 at 78. Johnson provided Curry two 16-digit identification numbers for the calls but no description of what took place on the calls. *Id.* Curry responded on April 23, 2010, asking, "can you help me out by summarizing what the issues were in each of these calls that would merit termination. [sic] how [sic] the calls were brought to your attention?" *Id.* Later that day, Johnson responded to Curry with summaries of four telephone calls from that month. *Id.* at 77. The summaries described "negative customer experiences," including instances of Plaintiff leaving customers on hold for extended periods of time; Plaintiff using an "unpleasant" tone with customers; and customers requesting to speak with Plaintiff's supervisor because of their displeasure with her service. *Id.* With respect to one call, Johnson wrote that the issue was not a negative customer experience but, instead, Plaintiff's "loud outburst" on the call center floor after Plaintiff terminated the call. *Id.*

On April 27, 2010, in an effort to contact Plaintiff with regard to her March 23, 2010 e-mail, Severino wrote Plaintiff an e-mail informing her that she had attempted to call Plaintiff the previous day, but a "very angry voice" answered and asked, " 'what you want?' " and then hung up the phone. *Id.*

Based on information gathered regarding the four telephone calls in April 2010, Curry and Young, with the assistance of Johnson and Edmond, prepared a disciplinary recommendation

that Plaintiff be discharged.  ECF No. 31-2 at 80.  The recommendation cited Plaintiff's "on-going rude behavior to peers, supervisors and to customers[.]" *Id.*  Young, Curry, and Edmond then consulted with Severino, Percent, and Maestas.  *Id.* at 7.  They decided that termination was appropriate.  *Id.* at 7.  At a meeting on May 11, 2010, with Plaintiff, Edmond, Johnson, and Young in attendance, Johnson explained to Plaintiff that, based on her inappropriate interactions with customers and behavior in the workplace, they had decided to terminate her employment.  ECF No. 39-8 at 5.  On May 13, 2010, Severino wrote Percent and Young an e-mail to tell them that she had just spoken with Plaintiff, who informed her that she had been terminated but was uncertain why her interactions with customers warranted termination.  *Id.* at 4.  Severino told Percent and Young that she apologized to Plaintiff for not meeting with her to discuss the complaint she raised in her March 23, 2010 e-mail regarding the FWW.  *Id.*

Plaintiff filed a charge of discrimination against Defendant with the South Carolina Human Affairs Commission on July 30, 2010, claiming race and sex discrimination and retaliation.  ECF No. 31-4 at 74.  Plaintiff alleged that she was terminated because of her race and sex, her concerns over white employees making racial statements, and the fact that she reported those statements.  *Id.*  Thereafter, Plaintiff brought this action, alleging discriminatory discipline and termination, as well as retaliation, under Title VII.[4]

## II.  STANDARD OF REVIEW

**A.  *The Magistrate Judge's Report and Recommendation***

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility for making a final determination remains with

---

[4] Plaintiff does not claim sex discrimination in this lawsuit.

this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

**B.  *Summary Judgment***

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

## II.  DISCUSSION

**A.  *Discriminatory Discipline Under Title VII***

Plaintiff's claim of racially discriminatory discipline is based on the allegation she was treated more harshly than Plagg for their participation in the 2009 conversation. Defendant moves for summary judgment on the grounds that Plaintiff failed to produce sufficient evidence that her disciplinary treatment was motivated by discriminatory animus.

**1.  *Legal Standard***

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1).  A plaintiff can establish claims of discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action.  *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010).

If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  It is not necessary for the court to "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the defendant's decision]."  *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)) (internal quotation marks omitted).  Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

The burden of establishing a prima facie case is not an onerous one. *Burdine*, 450 U.S. at 253. To state a prima facie case of discriminatory discipline in violation of Title VII, a plaintiff must demonstrate three elements: (1) that she is a member of a protected class; (2) that her misconduct was of comparable seriousness to the misconduct of employees outside the protected class; and (3) that the discipline imposed on the plaintiff was more severe than that imposed on similarly situated employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir. 1985). In determining whether a plaintiff's misconduct is comparable in seriousness to that of employees outside the protected class, a court should consider "the gravity of the offenses on a relative scale." *Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985) (citing *Solem v. Helm*, 463 U.S. 277 (1983)). A precise similarity between the compared offenses is not necessary. *Cook*, 988 F.2d at 511 ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances.").

**2.  *The Magistrate Judge's Report and Recommendation and Plaintiff's Objections***

The Magistrate Judge's analysis focused on the pretext portion of the *McDonnell Douglas* burden shifting framework. At the outset, the Magistrate Judge observed that Plaintiff's case rests on the factual premise that Plagg commented, "black people are anal." *Id.* at 7. The Magistrate Judge reasoned that, even if there is a factual dispute as to who made that comment, the dispute is not material because, in evaluating whether Defendant's reason for disciplining Plaintiff was a pretext for discrimination, the issue is whether Defendant honestly believed that Plaintiff was responsible for the comment. *Id.* (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217-18 (4th Cir. 2007)). The Magistrate Judge found no evidence to support a finding that,

12

prior to the FWW, Defendant had a basis upon which to conclude that Plagg, rather than Plaintiff, made racially insensitive comments during the 2009 conversation. *Id.* at 8. Accordingly, the Magistrate Judge recommended that Defendant's motion for summary judgment be granted as to Plaintiff's claim for discriminatory discipline under Title VII.

Plaintiff objects to the Magistrate Judge's recommendation on two grounds. ECF No. 48 at 2 & 4. First, Plaintiff asserts that the Magistrate Judge erred in finding that she and Plagg were not similarly situated employees for the purposes of analyzing their disparate disciplinary treatment. *Id.* at 2. Plaintiff argues that, although she admits to initiating the 2009 conversation, Plagg voluntarily entered the conversation and, along with the other employees present, inappropriately demonstrated how she folded toilet paper when using the restroom. *Id.* at 3. In this regard, Plaintiff argues that, by failing to consider Plagg's racially insensitive comment, "black people are anal," the Magistrate Judge incorrectly found that Plaintiff was more at fault than Plagg. *Id.* Plaintiff further argues that the Magistrate Judge should have considered Plagg's statement to Jenkins that she did not believe Plaintiff's commentary during the 2009 conversation was intended to be racially offensive. *Id.*

Second, Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed to produce sufficient evidence that the reason Defendant proffered for disciplining Plaintiff was false and, thus, a pretext. *Id.* at 4. At the outset, Plaintiff admits that she did not report Plagg's comment, "black people are anal," to Defendant until after she received the FWW. *Id.* Subsequent to the FWW, Plaintiff asserts that she complained of Plagg's comment to Young and Severino in HR, as well as through Defendant's compliance report hotline. *Id.* at 5. Plaintiff argues that the manner in which Defendant responded to her complaints, versus how Defendant responded to

13

Plagg's complaint regarding the same incident, demonstrates that Defendant's reason for the FWW was pretextual.  *Id.*  In addition, Plaintiff argues that the Magistrate Judge failed to account for evidence tending to show that Plaintiff did not make an inappropriate racial comment during the 2009 conversation.  *Id.*  Specifically, Plaintiff notes that, in the December report, HR reported that the participants in the 2009 conversation, including Plagg, did not understand Plaintiff's comments to be racially motivated.  *Id.* at 6.

**3.  *Analysis***

Plaintiff's prima facie case of discriminatory discipline depends on a jury crediting Plaintiff's deposition testimony that Plagg, rather than Plaintiff, made the comment, "black people are anal."  Based on that testimony, which the court must credit at the summary judgment stage, a reasonable jury could find that Plagg's comments and actions during the 2009 conversation were of "comparable seriousness" to Plaintiff's, and that Defendant's decision to discipline Plaintiff more severely than Plagg raises an inference of discrimination.  Although Plaintiff's evidence is not abundant, the burden of establishing a prima facie case is not intended to be onerous.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Accordingly, the court finds that Plaintiff has produced sufficient evidence to make a prima facie showing of discriminatory discipline.

However, Plaintiff has not met her burden to show that Defendant's proffered reason for disciplining Plaintiff, that she initiated an inappropriate conversation and made racially insensitive remarks[5], was pretextual.  The record shows that Defendant had no reason to believe

_____

[5] It is undisputed that Defendant met its burden of showing that it proffered a nondiscriminatory reason for disciplining Plaintiff.

prior to the issuance of the FWW that Plagg made a racially insensitive comment during the 2009 conversation.  As the Magistrate Judge noted, HR's December report, upon which Defendant relied in deciding to issue the FWW, cited no evidence to support the conclusion that Plagg made racially insensitive remarks during the 2009 conversation.  ECF No. 31-2 at 60-63.  Indeed, Plaintiff concedes in her objections that "Plaintiff did not report [Plagg's] racial statements until after Plaintiff received the FWW."  ECF No. 48 at 4.  Thus, the court finds that the record of the events that transpired before the FWW does not support a finding that Defendant's proffered reason for disciplining Plaintiff was pretextual.

With respect to what transpired after the FWW, the court does not find that the manner in which Defendant responded to Plaintiff's complaints shows that Defendant's proffered reason for disciplining Plaintiff was pretextual.  The record contains evidence that, on December 23, 2009, Plaintiff informed Young that, during the 2009 conversation, Plagg commented, "black people are anal."  ECF Nos. 39-1 at 5 & 31-4 at 56-57.  The court does not conclude that Defendant's failure to reopen its investigation of the 2009 conversation after Plaintiff's meeting with Young casts doubt on the honesty of Defendant's proffered reason for disciplining Plaintiff.  When Young and Plaintiff met, Defendant had recently completed an investigation in which it interviewed seven employees, including each employee witness to the 2009 conversation, and none, not even Plaintiff, reported that Plagg had made racially insensitive comments, or that anyone, for that matter, commented, "black people are anal."  Nevertheless, Young communicated to Plaintiff that she would look in to the matter.  ECF No. 31-4 at 56.  Although Plaintiff's conversation with Young placed Defendant on notice that Plagg might have engaged in inappropriate racial commentary during the 2009 conversation, the report from the compliance

15

report hotline (the "compliance report"), which Young reviewed and summarized on January 22, 2010, did not state that Plaintiff attributed the comment, "black people are anal," to Plagg. Rather, the compliance report indicated that Plaintiff alleged all the participants in the 2009 conversation "made comments." ECF No. 31-2 at 66. In her January 22, 2010 report, Young concluded that the FWW was appropriate. Even if Young ought to have continued investigating Plagg's role in the 2009 conversation, Plaintiff's e-mail communications with severino in March and April 2010 show that Defendant was attendant to Plaintiff's continued concerns about the grounds for her disciplinary treatment. In this regard, Severino's repeated attempts to contact Plaintiff in response to her March 23, 2010 e-mail undercut Plaintiff's claim that Defendant ignored her complaints. The court finds no evidence of pretext from the manner in which Defendant responded to Plaintiff's complaints after the FWW.

Finally, Plaintiff points to evidence in the record that suggests some of the participants in the 2009 conversation did not feel that Plaintiff's comments were racially motivated. Regardless, the evidence shows Defendant understood Plaintiff's language to be racially insensitive and not the sort it condones. The court will not second-guess Defendant's judgment about what language is appropriate for the work place. *See Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000). Thus, employees' opinions on what motivated Plaintiff's comments are not relevant to the issue of pretext.

Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claim for discriminatory discipline under Title VII.

**B.** *Discriminatory Discharge Under Title VII*

Plaintiff alleges that Defendant's decision to terminate her employment was motivated by racial animus.  Defendant moves for summary judgment on the grounds that Plaintiff failed to produce sufficient evidence to support that allegation.

**1.** *Legal Standard*

A Title VII claim for discriminatory discharge that relies on indirect evidence of discrimination is controlled by the *McDonnell Douglas* burden-shifting framework.  To establish a prima facie case, the plaintiff must show: (1) that she is a member of a protected class; (2) that she was discharged; (3) that she was qualified for her job and her job performance was satisfactory at the time of discharge; and (4) that similarly situated employees outside of her class were treated more favorably under apparently similar circumstances.  *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004); *Bryant v. Bell Atl. Md.*, Inc., 288 F.3d 124, 133 (4th Cir. 2002).  In evaluating whether the plaintiff was satisfactorily performing her job, " '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.' "  *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996)).  As to the fourth element, the plaintiff must identify a similarly situated comparator, which means an employee who is similar in all "relevant respects."  *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) and *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994)).  An employee is similar in all "relevant respects" if he or she " 'dealt with the same supervisor, [was] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish

17

their conduct or the employer's treatment of them for it.' " *Id.* (quoting *Mitchell*, 964 F.2d at

583); *see also Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007);

*Morrall v. Gates*, 370 F. App'x. 396, 398 n.1 (4th Cir. 2010) (holding that two employees were

not similarly situated because there was no evidence they were on probation during the same

period).

### 2.  *The Magistrate Judge's Report and Recommendation and Plaintiff's Objections*

The Magistrate Judge concluded that Plaintiff failed to establish a prima facie case of

discriminatory discharge.  ECF No. 44 at 9.  First, the Magistrate Judge found that Plaintiff's

own belief that her work performance did not justify termination does not establish a prima facie

case of race discrimination.  ECF No. 44 at 9.  Second, the Magistrate Judge found that Plaintiff

did not identify a valid comparator upon which to premise her claim of discrimination.  *Id.*

Accordingly, the Magistrate Judge recommended that Defendant's motion for summary judgment

be granted as to Plaintiff's claim for discriminatory discharge under Title VII.  *Id.*

Plaintiff objects to the Magistrate Judge's recommendation on two grounds.  First,

Plaintiff argues that the Magistrate Judge incorrectly held that Plaintiff has offered no valid

comparator for the purposes of establishing a prima facie case of discriminatory discharge.  ECF

No. 48 at 6.  Plaintiff contends that, because Defendant's issuance of the FWW was both a but-

for and proximate cause of Plaintiff's termination,"it is fair to consider, as a similarly situated

comparator, an individual outside of Plaintiff's protected class who partook in the [2009

Conversation] as well—in this case, Theresa Plagg."  *Id.* at 7.

Second, Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff offered

insufficient evidence to support a finding that Defendant's proffered reason for terminating

Plaintiff was false.[6]  *Id.*  In this regard, Plaintiff claims that the Magistrate Judge failed to consider "facts that strongly suggest that Defendant grasped at straws in an attempt to have Plaintiff terminated."  *Id.*  Specifically, Plaintiff cites HR consultant Curry's e-mail to Johnson, Plaintiff's supervisor, in which Curry asked for summaries of why Plaintiff's customer service on two telephone calls might support termination.  *Id.*  Plaintiff contends that this is evidence that HR was looking for a reason to terminate her.  *Id.*  Plaintiff also notes that, in one of the summaries, Johnson describes a call as "not particularly a negative customer experience."  *Id.*

### 3.  *Analysis*

After careful review of the record, the court concurs with the Magistrate Judge's recommendation.  The court finds that Plaintiff failed to produce sufficient evidence to satisfy the third and fourth elements of a prima facie face.  As to the third element, the undisputed evidence is that Plaintiff was terminated during the period when she was subject to the FWW and that her performance in April of 2010 was not up to the expectations of her supervisor.  Further, the record contains evidence of the following: customer complaints that Plaintiff was unpleasant on calls, ECF No. 31-2 at 77; that Plaintiff had a "loud outburst" on the call center floor, *id.*; and that Plaintiff was uncooperative when her supervisor tried to help her improve her customer service, in one instance, leaving a "coaching session" before it was complete, *id.* at 74-75.  In deciding that termination was appropriate, Defendant identified Plaintiff's "on-going rude behavior to peers, supervisors, and to customers."  ECF No. 31-2 at 80.  In response, Plaintiff offers neither positive performance evaluations, statements of Defendant that she was

---

[6] Upon review of the Report and Recommendation, the court does not find that the Magistrate Judge made a finding as to whether Defendant's reason for terminating Plaintiff's employment was pretextual.

satisfactorily performing her work at the time of termination, nor expert testimony as to Defendant's legitimate performance expectations and Plaintiff's performance in view of those expectations. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

To support her position, Plaintiff cites evidence that Johnson described one of Plaintiff's calls that he brought to the attention of HR as not "a negative customer experience." ECF No. 31-2 at 77. In context, that statement is not evidence that Defendant viewed Plaintiff's performance positively. Johnson brought the call to the attention of HR because of Plaintiff's "loud outburst" after completing the call, rather than because of conduct during the call that affected the customer's experience. Also, Plaintiff cites evidence of an e-mail HR consultant Curry wrote to Johnson, in which she asked, "can you help me out by summarizing what the issues were in each of these calls that would merit termination. [sic] how [sic] the calls were brought to your attention?" ECF No. 31-2 at 78. According to Plaintiff, this is evidence that Defendant "grasped at straws" in search of reasons to terminate Plaintiff. *Id.* Of note is that Curry's e-mail was in response to one Johnson wrote identifying two calls he thought were indicative of a problem with Plaintiff's performance; however, Johnson's e-mail provided no description of the calls, only what appears to be two 16-digit identification numbers for those calls. In context, Curry was asking Johnson to explain why he believed the two calls were noteworthy, which could not be discerned on the face of Johnson's e-mail. Finally, Plaintiff relies on her own unsubstantiated opinion that Defendant's concerns with her performance were exaggerated and "overcooked," which is not sufficient to stave off summary judgment. ECF No. 39 at 19. The court finds that Plaintiff has not made a prima facie showing as to the third element of her claim for discriminatory discharge.

20

As to the fourth element, Plaintiff has not produced evidence of a similarly situated comparator.  Although to satisfy this element it is not necessary that Plaintiff demonstrate that the circumstances under which she was terminated and the comparator was retained were identical in every respect, the record shows that Plaintiff and Plagg's circumstances at the time of Plaintiff's termination were materially different, *See Haywood v. Locke*, 387 F. App'x 355 (4th Cir. 2010).  The evidence shows that Plaintiff had come under scrutiny for her poor work performance, but there is no evidence comparable evidence with respect to Plagg.  In light of that important difference, Plagg is not a similarly situated comparator for the purposes of Plaintiff's prima facie case.  Furthermore, Plaintiff identifies no other potential comparators.

Even if Plaintiff could make a prima facie case, Plaintiff has not made a showing that Defendant's proffered reason for terminating Plaintiff was pretextual.  For the reasons discussed above, Plaintiff's evidence does not support a finding that she was satisfactorily performing her job at the time of her termination or that Defendant did not honestly believe her performance was satisfactory.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claim for discriminatory discharge under Title VII.

## C. *Retaliation Under Title VII*

Plaintiff alleges that Defendant terminated her employment in retaliation for complaints she made to Defendant regarding the issuance of the FWW.  Defendant moves for summary judgment on the grounds that Plaintiff failed to produce sufficient evidence to establish a prima facie case of retaliation.

**1.  *Legal Standard***

Title VII prohibits an employer from discriminating or retaliating against an employee because he has "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  *See* 42 U.S.C. § 2000e–3(a).  A claim for retaliation is subject to the *McDonnell Douglas* burden-shifting framework.  To establish a prima facie case, the plaintiff must show: (1) that she engaged in a protected activity; (2) that the employer acted adversely against her; and (3) that there was a causal connection between the protected activity and the asserted adverse action.  *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).  "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).  Although Title VII does not protect general complaints of unfair treatment, *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863 (4th Cir. 1999) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3rd Cir. 1995), "an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct."  *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003).  Complaint of an isolated racial slur is not a protected activity under Title VII.  *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006).

**2.  *The Magistrate Judge's Report and Recommendation and Plaintiff's Objections***

The Magistrate Judge concluded that Plaintiff failed to make a prima facie case of retaliation under Title VII.  First, the Magistrate Judge found that the record does not contain

22

evidence of a protected activity.  ECF No. 44.  In this regard, the Magistrate Judge determined that Plaintiff's March 23, 2010 e-mail to Severino was not a protected activity under Title VII because it did not reference racial discrimination.  *Id.*  With respect to Plaintiff's communication with Young on December 23, 2009, and Plaintiff's complaint to the compliance report hotline on January 8, 2010, the Magistrate Judge concluded that, whether or not those events constitute protected activities, both are too remote in time from Plaintiff's termination to find a causal relationship based on temporal proximity.  *Id.* n.5.  In addition, the Magistrate Judge rejected the possibility that Johnson brought Plaintiff's poor work performance to the attention of HR to retaliate against her for her alleged protected activity.  *Id.* at 11-12.  Even assuming Plaintiff had engaged in protected activity by way of her e-mail to Severino, the Magistrate Judge concluded that there is no evidence that Johnson had knowledge of Plaintiff's alleged protected activity.  ECF No. 44 at 11-12.

Second, the Magistrate Judge determined that, assuming Plaintiff could make a prima facie case of retaliation, Plaintiff cannot establish that the legitimate, non-discriminatory explanation Defendant proffered for her termination was pretextual.  *Id.* at 12.  The Magistrate Judge found that Plaintiff's opinion that Defendant's characterization of her work performance was exaggerated is insufficient to show pretext.  *Id.*  Accordingly, the Magistrate Judge recommended that Defendant's motion for summary judgment be granted as to Plaintiff's claim for retaliation under Title VII.  *Id.*

Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds.  First, Plaintiff argues that the Magistrate Judge incorrectly decided not to consider whether Plaintiff's call to the compliance report hotline or her communication with Young constituted

protected activities under Title VII because they are too remote in time from Plaintiff's

termination to support an inference of causation based on temporal proximity.  ECF No. 48 at 11.

Plaintiff recognizes that three to four months between an adverse employment action and a

protected activity is too long to support an inference of causation based on temporal proximity.

*Id.*  However, Plaintiff cites *Lettieri v. Equant Inc.*, 478 F.3d 640 (4th Cir. 2007), for the

proposition that, in cases where temporal proximity does not support an inference of causation,

" 'evidence of recurring retaliatory animus during the intervening period can be sufficient to

satisfy the element of causation.' "  *Id.* at 11-12.  Plaintiff contends that Defendant's persistent

disregard of Plaintiff's complaints that the FWW was unfair is evidence of retaliatory animus

during the period between Plaintiff's meeting with Young on December 23, 2009, and Plaintiff's

termination on May 11, 2010.  *Id.* at 12.  Second, Plaintiff objects to the Magistrate Judge's

conclusion that, because Johnson was unaware of Plaintiff's protected activities, his decision to

bring Plaintiff's deficient performance to the attention of HR could not have been motivated by

retaliatory animus.  *Id.* at 13.  Plaintiff contends that HR was aware of Plaintiff's protected

activity when it made the decision to terminate Plaintiff based on Johnson's complaint.  *Id.*

Third, Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed to establish that

Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination.  *Id.* at 13.

To that end, Plaintiff argues that the record shows that Defendant "struggled to find fault" with

Plaintiff's performance.  *Id.*

**3.  *Analysis***

          After careful review of the record, the court agrees with the Magistrate Judge's

conclusion that Plaintiff failed to make a prima facie case of retaliation.  The court finds no

evidence in the record that Plaintiff engaged in a protected activity, as neither Plaintiff's communications with Young or Severino in HR, nor her call to the compliance report hotline, placed, or should have placed, Defendant on notice that Plaintiff was opposing discrimination. In fact, in Plaintiff's e-mail to Severino, Plaintiff claimed that the decision to issue the FWW was the result of a "personal vendetta" Edmond held against her.  ECF No. 39-10 at 6.  In Plaintiff's complaint to the compliance report hotline, she complained that the FWW was too severe and that she should have received a verbal warning.  Plaintiff did not connect the issue to race or discrimination.  ECF No. 39-6 at 5.  Finally, Plaintiff's December 23, 2010 meeting with Young, in which she attributed the comment "black people are anal" to Plagg, was not a protected activity.  In neither Plaintiff's nor Young's account of the meeting did Plaintiff suggest that issuance of the FWW bore any relationship to her race or discrimination.  Moreover, Plaintiff's complaint of an isolated, racially insensitive comment does not constitute a protected activity. *See Jordan*, 458 F.3d at 339 (4th Cir. 2006).  Therefore, Plaintiff cannot make out a prima facie case of retaliation.

Assuming Plaintiff could establish a prima facie case of retaliation, for the reasons discussed in the previous section, she failed to establish that Defendant's legitimate, nonretaliatory reason for terminating her employment, that her performance was deficient and she was rude to other employees, was pretextual.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claim for retaliation under Title VII.

### III.  CONCLUSION

Upon careful consideration of the entire record, the court grants Defendant's motion for summary judgment.  The court adopts the Magistrate Judge's Report and Recommendation and

incorporates it herein by reference.


      **IT IS SO ORDERED.**


s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
March 29, 2013